# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

RAFEEA WILLIAMS                                                                                           PLAINTIFF

v.                                          No. 4:10CV01143 JLH

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT                                                                                      DEFENDANT

## OPINION AND ORDER

Rafeea Williams alleges race discrimination and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and various Arkansas statutes. Pulaski County Special School District has moved for summary judgment. For the following reasons, the District's motion for summary judgment is granted.

## I.

In March of 2003, Williams began working as a substitute teacher at Daisy Bates Elementary School, located within the Pulaski County Special School District. She became a first grade teacher in 2009. On September 4, 2009, Williams learned that her class's scheduled period to use the gymnasium had been moved. She alleges that the change favored a younger, Caucasian female teacher. Williams alleges that Matthew Mellor, the principal of Daisy Bates, and the other teacher falsely told her that the change was necessary to accommodate the other teacher's extracurricular jump rope team. Williams alleges that the change was really to allow the other teacher to "have lunch and socialize with her friends[.]" Mellor told her to meet with him at the end of the day, but Williams refused. She later explained that she refused because she "was not obligated to see him on [her] time after school" and she already had an appointment with a parent scheduled for later that

day.  She contends that Mellor then treated her like "a criminal or young child" by "marching" her down the hall to his office.  Williams asserts that, despite her protests, Mellor insisted that she go home and suspended her.

On November 27, 2009, Williams filed a charge of discrimination with the EEOC alleging that, because of her race and age, she was suspended and given a disciplinary letter for being absent during the time she was suspended.  On April 28, 2010, Mellor sent a recommendation to the acting Superintendent of Education that Williams's employment be terminated.  On April 30, 2010, Acting Superintendent of Education Robert McGill suspended Williams with pay and recommended terminating her employment contract with the District.  On May 13, 2010, the EEOC sent Williams a right to sue letter.  On July 28, 2010, Williams filed another charge of discrimination with the EEOC alleging that the decision to suspend and recommend her termination was a result of race and age discrimination.  She also added an allegation that the District had retaliated against her for filing the first EEOC charge.  Williams commenced the instant lawsuit on August 10, 2010.  On September 14, 2010, after a hearing, the District's Board of Education voted to terminate Williams's employment contract with the District.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott Cnty.*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

### III.

Where direct evidence of discrimination is lacking, a plaintiff's claims of race and age discrimination pursuant to Title VII and the ADEA, as well as claims of retaliation, are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Young-Losee v. Graphic Packaging Intern., Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (Title VII); *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (the ADEA); *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir. 2007) (retaliation). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). A prima facie case of discrimination requires proof that (1) the plaintiff is a member of a

protected class; (2) the plaintiff met the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004).

If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007). If the employer provides a legitimate reason, the plaintiff must then show that the proffered reason is a pretext for the unlawful discrimination. *Id.* Where an employee is unable to show pretext, summary judgment is appropriate. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988).

In the instant case, there are a number of allegations of discriminatory conduct, but it is unclear which ones serve as part of Williams's lawsuit. In her first EEOC charge, Williams alleged that because of her race and age, her class's gymnasium period was changed, she was suspended on September 4th, 2009, and she received a disciplinary letter for her absence during her suspension. In her second EEOC charge, Williams alleges that her second suspension and recommendation for termination resulted from impermissible discrimination. In her complaint, Williams states that she is suing regarding discrimination which occurred "on or about September 4, 2009." This is consistent with the factual allegations of her complaint which only discuss the circumstances of the change to her class schedule and her alleged suspension by Mellor. Her complaint does not discuss the disciplinary letter, her later suspension, and her ultimate termination. However, in its motion for summary judgment, the District treats Williams's complaint as if it attempts to state a claim for race discrimination and age discrimination regarding her second suspension and eventual termination.

Also, Williams refers to her termination in her response to the District's motion. The discipline letter was not raised in Williams's complaint and has remained unmentioned after the first EEOC charge.[1]

Construing Williams's pro se complaint broadly and in light of the District's discussion of her second suspension and later termination, the Court concludes that Williams seeks relief from the District for the following incidents of alleged discrimination: (1) that her class's gymnasium period was moved; (2) that she was sent home against her wishes by Mellor; and (3) that she was suspended and terminated.

Williams meets the first prong of her prima facie case since she is a fifty-eight year old African-American. However, there is evidence indicating that Williams may not have been meeting the District's legitimate expectations. In his affidavit, Mellor testified that, on August 28, 2009, he learned that six first grade students from Williams's classroom were discovered unsupervised. According to Mellor, Williams was unaware of the students' absence from her classroom. Mellor testified that, when he confronted Williams regarding this incident, she became insubordinate and began screaming at him. Mellor testified that he had to speak to Williams about her failure to complete lesson plans or grade books for her students. Mellor also testified that Williams failed to complete state-mandated student assessments even after she was notified of this requirement. Mellor testified that, on November 18, 2009, Williams took her students on a field trip to a location which had not been approved. Mellor testified that these actions violated District procedure and policy.

---

[1] Not even the liberal construction of pleadings afforded to pro se litigants allows them to raise a claim which was expressly stated in an EEOC charge but then entirely omitted in the subsequent complaint. *C.f. Hinnenkamp v. City of St. Cloud*, 178 Fed. App'x 620, 621 (8th Cir. 2006).

Mellor also testified that Williams was repeatedly insubordinate and engaged in a pattern of "incompetent performance, conduct which materially interfered with the continued performance of her duties, repeated and material neglect of duty and failure to follow reasonable written regulations and policies, and conduct unbecoming a professional teacher dating back to the 2008-2009 school year." These allegations, and others like it, were included in both Mellor's letter and McGill's letter recommending her termination. Williams has not offered any evidence tending to show that any of Mellor's testimony is false. Nor has she provided any evidence that these allegations do not constitute grounds for terminating her or that other similarly situated teachers committed similar violations and were not terminated. However, the evidence indicates that the District's Board of Education found the allegations regarding student assessments and the grade and lesson plan books to be "not true." Further, Williams has worked for the District as a substitute teacher since 2003 and there is no evidence that the District was unhappy with her performance prior to the 2008-2009 academic year. Hence, for the sake of argument, the Court will assume that a question of fact exists regarding whether Williams was qualified for her position as a teacher.

The Court concludes as a matter of law that Mellor's decision to reschedule Williams's gymnasium period was not an adverse employment action because it was not a "material employment disadvantage" but rather a "minor changes in working conditions that" at most "merely inconvenience[d]" Williams. *See Brannum v. Mo. Dept. of Corr.*, 518 F.3d 542, 549 (8th Cir. 2008) (internal quotations and citation omitted). Williams "suffered no diminution in her title, salary, or benefits." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994); *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002). Therefore, the District is entitled to summary judgment on Williams's claim that she was discriminated against when her class's

gymnasium period was moved.

Regarding Williams's claim that she was suspended by Mellor on September 4, 2009, the District argues that, pursuant to the Arkansas Teacher Fair Dismissal Act, specifically Ark. Code Ann. § 6-17-15018, Mellor did not have the authority to suspend Williams. However, that Act "applies only to suspensions that are imposed in connection with a superintendent's recommendation of termination or nonrenewal[.]" *McGough v. Pine Bluff Sch. Dist.*, 79 Ark. App. 235, 240, 85 S.W.3d 920, 923 (Ark. Ct. App. 2002). Here, Mellor's decision to send Williams's home despite her protest was not connected with a recommendation of termination or nonrenewal. Hence, the District's argument that Mellor's conduct cannot, under state law, constitute a suspension is unpersuasive. A jury could conclude that a principal's decision to send a teacher home against her will constitutes a suspension.

If Williams was suspended without pay, Mellor's action would likely constitute an adverse employment action. *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006). However, if Williams's pay was unaffected by the suspension, then Mellor's decision to send her home would probably not be a adverse employment action. *See Dodge v. City of Belton, Mo.*, No. 10-0038-CV-W-ODS, 2011 WL 529708, *3 (W.D. Mo. Feb. 4, 2011). Williams, who has the burden of proof, neither alleges nor offers any evidence indicating that her pay was affected when Mellor sent her home. Even if her suspension was an adverse employment action, Williams must still show that the facts surrounding Mellor's actions raise an inference of discrimination. The only possible argument on these facts is that Mellor sent Williams home in retaliation for her complaints about his decision to provide preferential treatment to a younger, Caucasian employee by shifting the gymnasium schedule.

Even if this theory sufficed to establish the fourth prong of Williams's prima facie case, she has offered no evidence undermining Mellor's legitimate, nondiscriminatory explanations for sending her home. The District explains that Mellor sent Williams home because she was upset about his decision to switch the her class's time in the gymnasium and acted insubordinately. Williams's factual allegations in her complaint strongly support these explanations. Williams states that she was upset about Mellor's decision to change the gymnasium schedule, took her students to his office and accused him of "showing bias and preferential treatment to [the other teacher] and against me." She told Mellor that she "couldn't understand why everyone else got what they wanted and [she] couldn't even get what was given to [her]." She also refused to meet with him at the end of the day to discuss the matter. Williams even compared herself to a slave and Mellor to a master while discussing the situation with him in front of her Pulaski Association of Classroom Teachers representative. Apart from Williams's legally conclusory allegations that Mellor discriminated against her, nothing in the complaint indicates that the District's explanations are pretextual. The District is entitled to summary judgment on Williams's claim that she was discriminated against when Mellor sent her home.

Regarding Williams's claim that she was suspended[2] and terminated on account of her race and age, the District contends that she was suspended and then terminated because she (1) failed to complete state-mandated assessments of her students, (2) refused to complete and maintain grade books or lesson plan books, (3) was repeatedly insubordinate to her supervisors, and (4) failed to follow District policy by endangering the safety of students. McGill suspended Williams with pay

---

[2] Since the District continued to pay her, Williams may not be entitled to relief for this suspension. *See Dodge*, 2011 WL 529708, *3.

until the hearing before the Board for the abovementioned reasons. According to its meeting minutes, the Board found the first two reasons for terminating Williams were "not true." However, the Board found the last two reasons "true" and voted to terminate Williams. Since the Board concluded that the first two reasons were not true, the Court will disregard these reasons.[3] Nevertheless, insubordination and endangering children in violation of school policy constitute legitimate, nondiscriminatory justifications for suspending and terminating a teacher. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) ("Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination."). Consequently, the burden shifts back to Williams to provide evidence that these justifications for suspending and terminating her were pretextual.

Williams submitted no evidence at all in opposing the District's motion for summary judgment. Her allegations either are conclusory assertions of discrimination or do not undermine the District's explanations for suspending and terminating her. Without some evidence that the District's explanations are a pretext for discrimination, the District is entitled to summary judgment on Williams's claim for wrongful suspension and termination because of her age and race.

Williams's claim that the District retaliated against her for filing her first EEOC charge also fails. Just as she offers no evidence indicating that the District's legitimate, nondiscriminatory explanations for suspending and terminating her are pretextual, similarly Williams fails to offer any evidence that the District's explanations mask a retaliatory motive. *See Phillips v. Matthews*,

---

[3] *Cf. Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995) ("[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext for discrimination.").

547 F.3d 905, 911 (8th Cir. 2008) ("[The plaintiff] offers no evidence other than speculation to support a connection between her termination and" protected activity.); *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) (conclusory affidavit and deposition testimony do not preclude summary judgment). The District is entitled to summary judgment on Williams's claim of retaliation.

Because this Court has jurisdiction over Williams's employment discrimination claims, the Court has the authority to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(a) ("[I]n any civil action in which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy. . . ."). The district court may decline to exercise supplemental jurisdiction over a claim under section 1367(a) if the district court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Out of respect for the principles of federalism and for the courts of the State of Arkansas, the Court will exercise its discretion under section 1367(c) to decline to exercise supplemental jurisdiction with respect to Williams's state-law claims. *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that the district court should have declined pendant jurisdiction after dismissing the federal claims because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions."). Williams has expressed an interest in bringing state-law claims

against a number of individuals. The Court has already declined to address those claims in this action. Consequently, if she wishes to pursue her claims, Williams will find herself in state court anyway. The factors weigh against the Court exercising supplemental jurisdiction over Williams's state-law claims.

## CONCLUSION

For the foregoing reasons, Pulaski County Special School District's motion for summary judgment is GRANTED. Document #24. Rafeea Williams's federal claims for employment discrimination based on race and age and for retaliation are dismissed with prejudice. Her claims that arise under the laws of the State of Arkansas are dismissed without prejudice.

IT IS SO ORDERED this 24th day of May, 2011.

*J. Leon Holmes*
———————————————
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE